UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SLYVIA MARIE BYRNES,　　　　　　　　　　　　　　　　　　　　　No. 20-12086-t7

　　　Debtor.

BARRY J. BYRNES,

　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 20-1070-t

SYLVIA MARIE BYRNES,

　　　Defendant.

## OPINION

At a final pretrial conference in this proceeding, the Court asked the parties to consider whether Plaintiff's state law tort claims could be adjudicated by the Court. The parties briefed the issue and on January 12, 2022, the Court heard oral arguments. Having considered the arguments and relevant law, the Court concludes that Plaintiff has no right to a jury trial of any part of this proceeding and consented to the Court trying his tort claims. The Court therefore will reschedule the final pretrial conference and set this matter for a prompt trial.

A.　　Facts.[1]

Based on the docket in this proceeding, the Court finds:

---

[1] The Court takes judicial notice of its docket in this consolidated adversary proceeding, the main bankruptcy case, and the State Court Action (defined below). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

Barry Byrnes, the pro se[2] plaintiff, is Defendant/Debtor's estranged husband. On March 29, 2019, Plaintiff filed a state court action against Defendant and their son in the Third Judicial District Court, State of New Mexico, styled *Barry Byrnes v. Sylvia and Matthew Byrnes*, No. D-307-CV-2019-00916 (the "State Court Action"). The complaint alleged six causes of action. The state court judge dismissed four of the claims, leaving only claims for defamation and intentional infliction of emotional distress ("IIED"). These claims relate to a heated argument between Plaintiff and Defendant in July 2018, which prompted Defendant to call the police and report that Plaintiff had assaulted her.

Defendant filed this chapter 7 bankruptcy case on October 30, 2020. Plaintiff filed a notice of removal on November 18, 2020, removing the State Court Action to this Court. The removed action was docketed as an adversary proceeding. On the same day Plaintiff commenced another adversary proceeding by filing a complaint alleging, inter alia, the defamation and IIED claims plead in the removed action and asking the Court to declare any damages nondischargeable.

Fed. R. Bankr. P. ("Bankruptcy Rule") 9027(a) requires that all notices of removal "contain a statement that upon removal of the claim or cause of action, the party filing the notice does or does not consent to entry of final orders or judgment by the bankruptcy court . . . ." Similarly, Bankruptcy Rule 7008 requires all adversary proceeding complaints to contain similar language. Neither Plaintiff's notice of removal nor complaint contained the required language.

There was substantial litigation after the notice of removal and complaint were filed. Defendant filed a motion to dismiss this adversary proceeding, which the Court denied. The Court ordered that the two adversary proceedings be consolidated and that Plaintiff file an amended complaint. Plaintiff filed a motion for default judgment and for a refund of a filing fee, as well as

---

[2] Mr. Byrnes used to be licensed to practice law in New Mexico. He currently is on inactive status.

a motion for relief from the Court's order requiring him to file an amended complaint. The Court denied these motions. Plaintiff appealed the denials to the Tenth Circuit Bankruptcy Appellate Panel (BAP).

Plaintiff filed an amended complaint on February 10, 2021. As with his first complaint, the language required by Bankruptcy Rule 7008 was not included.[3]

The amended complaint has two counts. In count one, which incorporates a "supplemental" complaint filed in the State Court Action, Plaintiff asserts his removed claims for defamation and IIED and asks that any judgment thereon be declared nondischargeable. Count two seeks an order requiring Debtor "to pay and continue to pay her share of contract and/or domestic support obligations" related to their marital residence and alleging numerous theories under which such obligations are nondischargeable. Count Two also asks for an accounting "to identify and value" the parties' community and separate assets, and to "determine the value of his lien on the Debtor's interest in community property."

Defendant answered count one of the amended complaint and filed a motion to dismiss count two for failure to state a claim upon which relief can be granted.

The Court held a scheduling conference on March 8, 2021, and entered a scheduling order March 12, 2021. On the same day, Plaintiff filed a supplemental motion for default judgment and a motion to strike Defendant's answer, while the BAP dismissed Plaintiff's appeals.

---

[3] To preserve his right to a jury trial, Plaintiff was required to "serv[e] the other parties with a written demand-which may be included in a pleading . . . ." Bankruptcy Rule 9015 and Fed. R. Civ. P. 38(b). Plaintiff's attempts to comply with this requirement were weak. He included an allegation in count one of his amended complaint that "Plaintiff requests trial by jury." In his supplemental state court complaint, which is attached to the amended complaint as an exhibit, the "Wherefore" clause includes a request for "trial by jury." This language probably is sufficient to preserve any right Plaintiff might have had to jury trial of count one, but it certainly could have been clearer.

The main bankruptcy case was closed on March 11, 2021.

On March 18, 2021, Plaintiff filed a motion to disqualify the Court from presiding over the adversary proceeding.

On March 24, 2021, Plaintiff filed a motion to transfer the proceeding to the District Court and a document titled "Consent or Refusal to Consent to the Bankruptcy Court Hearing and Determining Contested Matters," in which Plaintiff stated that "the undersigned **does not consent** to the bankruptcy court hearing and determining this Contested Matter or entering final orders or judgment in this Contested Matter" (emphasis in original).[4] With the filing of this latter document, Plaintiff tacitly acknowledged that he had not previously stated his consent or nonconsent.

On July 2, 2021, the Court granted Defendant's motion to dismiss count two, leaving only the defamation and IIED claims to be adjudicated.

The proceeding has progressed through the pretrial stages. Discovery is now complete and the defamation and IIED claims are ready for trial. The question before the Court is whether it, the District Court, or the state court should try the claims.

B.   There is No Right to a Jury Trial in Nondischargeability Proceedings.

Plaintiff does not have a right to a jury trial of this nondischargeability proceeding. In *In re Varney*, 81 F.3d 152 (4th Cir. 1996) (unpublished), for example, the Fourth Circuit held:

> The consensus in the courts which have addressed this issue is that there is no constitutional right to a jury trial on the issue of dischargeability. *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d. 1242 (3d Cir.), *cert. denied*, ⸺ U.S. # 6D 6D6D#, 63 U.S.L.W. 3381 (U.S. Nov. 14, 1994) (No. 94–315); *In re Maurice,* 21 F.3d 767, 773 (7th Cir.1994) (11 U.S.C.A. §§ 523(a)(2)(A) & (a)(6) (West 1993)); *In re McLaren,* 3 F.3d 958, 960 (6th Cir.1993); *In re Hallahan*, 936 F.2d 1496, 1505–06 (7th Cir.1991) (11 U.S.C. § 523(a)(6) (1988)); *In re Hooper,* 112 B.R. 1009, 1012 (Bankr. 9th Cir. 1990).

---

[4] Plaintiff apparently copied this from a form available on the Court's web site. The form is to be used in contested matters, not adversary proceedings.

> We agree with these decisions that a proceeding by a creditor to determine dischargeability is equitable in nature and that a debtor who filed a voluntary bankruptcy petition has no right to a jury trial in such a proceeding. *See Hallahan,* 936 F.2d at 1505–06. We therefore affirm the district court order affirming the bankruptcy court's denial of Cecil Varney's request for a jury trial on the issue of dischargeability of his debt to Angela.

81 F.3d 152 at *2. Similarly, in *In re Hallahan*, 936 F.2d 1496 (7th Cir. 1991), the Seventh Circuit held:

> Applying the Supreme Court's teachings to this case, we conclude that Hallahan had no Seventh Amendment right to a jury trial on his dischargeability claim. Two independent lines of reasoning support this conclusion. First, application of the two-part test set forth in *Granfinanciera* reveals that a dischargeability proceeding is a type of equitable claim for which a party cannot obtain a jury trial. Dischargeability proceedings, like actions to recover preferential or fraudulent transfers, are core proceedings. *See* 28 U.S.C. § 157(b)(2)(I) and (J) (1988). However, dischargeability proceedings are unlike actions to recover preferential transfers in that historically they have been equitable actions tried without juries:
>> [A] bankruptcy discharge and questions concerning the dischargeability of certain debts, involve issues with an equitable history and for which there was no entitlement to a jury trial in the courts of England prior to the merger of law and equity.
>
> *In re Hooper,* 112 B.R. 1009, 1012 (Bankr. 9th Cir. 1990); *In re Johnson,* 110 B.R. 433, 434 (Bankr. W.D. Mo. 1990); *In re Brown,* 103 B.R. 734 (Bankr. [ ].D. Md. 1989), *see also* Countryman, *The New Dischargeability Law,* 45 Am. Bankr. L.J. 1, 36–39 (1971). The relief sought is also equitable since the essence of a dischargeability claim is a declaration that the debt is indeed dischargeable or non-dischargeable. *Hooper,* 112 B.R. at 1012.

936 F.2d at 1505; *see also Smith-Scott v. U.S. Trustee*, 2018 WL 572866, at *5 (D. Md.) (debtor not entitled to a jury trial of discharge litigation); *In re Hutchins,* 211 B.R. 322, 324 (Bankr. E.D. Ark. 1997) (debtor/plaintiff had no right to a jury trial, having submitted himself to the equitable jurisdiction of the bankruptcy court); *In re Grabis*, 2020 WL 7346467, at *18 (Bankr. S.D.N.Y.) (debtor had no jury trial right in nondischargeability litigation; collecting cases);

While these cases addressed a *debtor's* right to a jury trial in a nondischargeability action, their reasoning applies with equal force to a *creditor's* right to a jury trial. An often cited case is

-5-
Case 20-01070-t    Doc 137    Filed 01/28/22    Entered 01/28/22 14:07:33 Page 5 of 14

*In re Devitt*, 126 B.R. 212 (Bankr. D. Md. 1991). Relying on the "well-known maxim that once equitable jurisdiction has been properly invoked it will proceed to render a full and complete disposition of the controversy," the court held:

> If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt.

126 B.R. at 215. The court concluded that "*when a creditor voluntarily submits himself to bankruptcy jurisdiction by filing a lawsuit in the bankruptcy court against a debtor on an equitable cause of action, he is not entitled to a jury trial under the Seventh Amendment*." 126 B.R. at 216 (emphasis in original). Similarly, in *In re Fink*, 294 B.R. 657 (W.D.N.C. 2003), the district court held:

> [T]he Court is unpersuaded by Plaintiff's argument that it has brought a fraud action seeking money damages, and thus that its cause of action is legal, rather than equitable, in nature. As at least one other court has noted, "the fact that the plaintiff [has] asked for monetary damages does not change the equitable nature of this proceeding." *Berryman*, 84 B.R. at 180 (also noting, "[t]here is no such thing as a 'fraud action' in bankruptcy court when it is coupled with a nondischargeability claim."). Plaintiff's fraud claim is asserted as a nondischargeability claim over which the bankruptcy court exercises equitable jurisdiction. Of course, a court sitting in equity may always grant monetary relief where appropriate, so the fact that Plaintiff seeks money damages does not affect the Court's analysis. *Id.*

294 B.R. at 660; *see also In re Smith*, 84 B.R.175, 180 (Bankr. D. Ariz. 1988) ("The fact that the plaintiffs have asked for monetary damages does not change the equitable nature of this proceeding."); *In re Duffy,* 317 B.R. 49, 51 (Bankr. D.R.I. 2004) (parties in dischargeability litigation are not entitled to a jury trial); *In re Dambowsky*, 526 B.R. 590, 608 (Bankr. M.D.N.C. 2015) (plaintiffs' claims are being determined in a non-dischargeability action, an equitable

proceeding, which means that plaintiff has no right to a jury trial); *U.S. v. Stanley*, 595 Fed. App'x. 314, 320-21 (5th Cir. 2014) (a dischargeability proceeding is a type of equitable claim for which a party cannot obtain a jury trial); *In re Hashemi*, 104 F.3d 1122, 1124 (9th Cir. 1997) (bankruptcy litigants have no right to a jury trial in dischargeability proceedings); *In re Hawkins*, 231 B.R. 222, 225 (D.N.J. 1999) ("the reasoning underlying the *Hallahan* decision has been accepted by a legion of other federal courts"); *In re White,* 222 B.R. 831, 834–35 (Bankr. W.D. Tenn. 1998) (parties to nondischargeability litigation are not entitled to a jury trial); *In re Tanner,* 1997 WL 578746, at *4 (Bankr. N.D. Ill.) (same); *In re Fineberg,* 170 B.R. 276, 280–81 (E.D. Pa. 1994) (creditor had no right to a jury trial of its nondischargeability action); *In re Choi*, 135 B.R. 649, 652 (Bankr. N.D. Cal. 1991) ("a creditor which invokes the bankruptcy court's jurisdiction seeking a declaration that a debt is nondischargeable has no stronger right to a jury trial than a creditor which files a claim"). *See also In re Lang*, 166 B.R. 964, 966 (D. Utah 1994) ("As noted by the court in *Choi*, it is functionally impossible to determine whether a debt is dischargeable without addressing issues of liability and damages.").

There is a minority view. In *In re Henderson*, 423 B.R. 598 (Bankr. N.D.N.Y. 2010), the court stated:

> "Dischargeability actions are historically equitable in nature and tried without juries." *Coke Chevrolet Co. v. Cummins,* 1992 WL 21979[9], *1, 1992 Bankr. LEXIS 1352, at *2 (Bankr. W.D. Ark. May 12, 1992). A proceeding which addresses solely the issue of dischargeability, without reaching questions of liability and amount, does not give rise to an entitlement to a jury trial. *Id.,* 1992 WL 21979[9], *1, 1992 Bankr. LEXIS 1352, at *7–8. If the plaintiff seeks an adjudication of liability and damages, however, predicated upon a common law action for fraud, plaintiff may be entitled to a jury trial on those issues.

423 B.R. at 626 n.17 (citing *Boudle v. The CMI Network, Inc.,* 2007 WL 3306962, *4 (E.D.N.Y.)); *see also In re Weinstein*, 237 B.R. 567, 577 (Bankr. E.D.N.Y. 1999) (while creditor did not have

a right to a jury trial on question of nondischargeability, it did on the question of liability and damages).

The Court find the majority view persuasive, and adopts it. If a creditor files a proof of claim, he subjects himself to the bankruptcy court's equitable jurisdiction. *Langenkamp v. Culp,* 498 U.S. 42, 44 (1990). Similarly, a creditor subjects himself to the bankruptcy court's equitable jurisdiction if he files a nondischargeability action. Section 523(a) requires the creditor to prove the existence and amount of a debt and that the debt comes within one of the nondischargeability provisions of § 523(a)(2), (4), or (6). Thus, proof of liability and amount of damages are elements of § 523(a) claim, just as much as proof of the nondischargeable nature of the debt.

Furthermore, bankruptcy courts must carefully consider all the facts relevant to a debt to determine whether it is dischargeable, including those relevant to liability and amount. The nondischargeability inquiry is not separable from analysis of liability and damages.

Finally, Plaintiff could have preserved his jury trial right by keeping his claims in state court and moving for relief from the automatic stay. Rather than doing that, Plaintiff elected to litigate his claims in bankruptcy court as part of the nondischargeability action. In doing so, Plaintiff submitted to the equitable jurisdiction of the Court. Plaintiff cannot eat his cake and have it too.

C. Plaintiff's Complaint is an Informal Proof of Claim.

As an additional basis for ruling that Plaintiff has no right to a jury trial, the Court holds that his complaint constituted an informal proof of claim. In *Lang*, a case similar in some respects to this proceeding, the debtor's husband filed a nondischargeability action against her, which restated all of the state law claims he had brought against her prepetition. The plaintiff/husband asserted a right to a jury trial of the state law claims. The *Lang* court first observed:

> Where a creditor submits a claim against the bankruptcy estate, however, the claimant loses his right to a jury and submit to the bankruptcy court's equitable power.

166 B.R. at 966. The court went on:

> This court is satisfied that Dr. Lang filed an informal proof of claim in the bankruptcy court when, in addition to requesting a determination of dischargeability, he added four counts restating each of his state law claims. Just as a counterclaim sufficed as an informal proof of claim in *Americana,* Dr. Lang's Complaint for damages arising from his state law claims amounts to a written demand against Ms. Lang's estate and constitutes an informal proof of claim. Consequently, Dr. Lang has waived his right to a jury trial . . . .

166 B.R. at 967.

In the Tenth Circuit, an informal proof of claim (1) must be in writing; (2) must contain a demand by the creditor on the debtor's estate; (3) must express an intent to hold the debtor liable for the debt; (4) must be filed with the Bankruptcy Court; and (5) based on the facts of the case, it would be equitable to allow the amendment. *In re Reliance Equities, Inc.*, 966 F.2d 1338, 1345 (10th Cir. 1992). Here, the first four elements are satisfied and the fifth one does not apply.[5]

Like the court in *Lang*, the Court concludes that Plaintiff filed an informal proof of claim in the case and has no right to a jury trial of the asserted claims.

D. <u>Are Defamation and IIED "Personal Injury Torts"?</u>

Having concluded that Plaintiff has no right to a jury trial of his nondischargeability action against Defendant, the Court will address whether the defamation and IIED claims must be tried

---

[5] Element number 2 is satisfied because Plaintiff's count two of the amended complaint incorporated all allegations in the original complaint, including requests for an accounting of the parties' separate and community property and a determination of the value of Plaintiff's alleged lien on estate property. In the amended complaint, Plaintiff also alleged that Defendant "testified that she abandoned her interest in all community property but for the marital residence." These allegations seek ownership of, or to establish a lien on, estate property, given that all community property was part of Defendant's bankruptcy estate, 11 U.S.C. § 541(a)(2), and had not been abandoned when the complaint was filed. 11 U.S.C. § 554(c).

by the District Court because they are "personal injury torts." 28 U.S.C. § 157(b)(5) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Plaintiff argues that his defamation and IIED claims are "personal injury torts" and must be tried by the District Court.

It is unclear whether one or both of Plaintiff's claims are personal injury torts. Many courts have construed the scope of the phrase "personal injury torts" in 28 U.S.C. § 157(b)(5). The results fall into three camps, the "narrow," "broad," and "middle" interpretations of the phrase. The Tenth Circuit has not addressed the issue.

Courts applying a "narrow" construction hold that a personal injury tort "requires a trauma or bodily injury or psychiatric impairment beyond mere humiliation." *In re Gawker Media LLC*, 571 B.R. 612, 620 (Bankr. S.D.N.Y 2017); *see also Massey Energy Co. v. W. Va. Consumers for Justice,* 351 B.R. 348, 351 (E.D. Va. 2006) (claims for defamation and business conspiracy were not personal injury torts where there was no allegation of actual physical injury); *In re Interco,* 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991) (an emotional distress claim was not within the meaning of "personal injury tort"); *In re Vinci,* 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989) ("[A] tort without trauma or bodily injury is not within the statutory exception for a personal injury claim."); *In re Cohen*, 107 B.R. 453, 455 (S.D.N.Y 1989) ("Congress intended [the § 157(b)(5)] exception for a narrow range of claims" "such as a slip and fall or a psychiatric impairment beyond mere shame and humiliation."); *In re C.W. Mining Co.*, 2012 WL 4882295, at *6 (D. Utah.) (adopting the narrow view).

Courts applying a broad view "interpret[] personal injury tort to embrace a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action

for damages and include damage to an individual's person and any invasion of personal rights, such as libel, slander, and mental suffering." *Gawker Media*, 571 B.R at 620, quoting *In re Residential Capital, LLC*, 536 B.R 566, 572 (Bankr. S.D.N.Y 2015) (collecting cases).

Other courts take a "hybrid" or "middle" view and consider the content of the complaint ostensibly presenting a personal injury tort claim for "earmarks of financial, business or property tort claim[s] or a contract claim" which may cause it to fall outside of the § 157(d) exception. *Residential Capital*, 536 B.R. at 572; *In re Sheehan Memorial Hosp.*, 377 B.R. 63, 68 (W.D.N.Y. 2007) (the "middle view . . . weighs the personal nature of the injury against characteristics involving financial, business, property or contract rights"); *In re Smith*, 389 B.R. 902, 908 (Bankr. D. Nev. 2008) (adopting the "middle ground"); *In re Bailey*, 555 B.R. 557, 563 (Bankr. N.D. Miss. 2016) (same).

E.  Plaintiff Consented to the Court trying the Defamation and IIED Claims.

The Court need not predict how the Tenth Circuit would interpret "personal injury torts" because, even if defamation and IIED are personal injury torts, Plaintiff consented to the Court trying his tort claims and entering a final judgment.

1.  Parties can consent to the bankruptcy court hearing personal injury tort claims. 28 U.S.C. § 157(b)(5) is not jurisdictional; parties can consent to the bankruptcy court, rather than the district court, hearing personal injury torts. In *In re Je Hyeon Lee*, 2015 WL 1299747 (Bankr. C.D. Cal.), for example, the court held that "[b]ecause 28 U.S.C. § 157(b)(5) is not jurisdictional, a party may effectively consent to the bankruptcy court adjudicating a personal injury tort claim by failing to raise an objection in that court and thus waive the restriction on bankruptcy court adjudication under § 57(b)(5)." *Id.* at *4, citing *Stern v. Marshall,* 131 S. Ct. 2594, 2606–2608 (2011). Similarly, in *In re Larsen*, 2019 WL 4621256, at *45 (Bankr. C.D. Cal.), the court held:

> Ordinarily, the bankruptcy court cannot liquidate an unliquidated personal injury tort claim for the purpose of distribution in a bankruptcy case, and such a claim must be tried by the federal district court. . . . Because 28 U.S.C. § 157(b)(5) is not jurisdictional, a party may effectively consent to the bankruptcy court adjudicating a personal injury tort claim by failing to raise an objection in that court and thus waive the restriction on bankruptcy court adjudication under § 157(b)(5). *Stern v. Marshall*, 564 U.S. 462, 478-482 (2011).

*See also In re Saenz*, 2016 WL 9021733, at *4 (Bankr. S.D. Tex.) ("Even if the liquidation of a claim in a dischargeability proceeding is not a core proceeding in bankruptcy, a bankruptcy court may hear, determine, and enter final orders and judgments on this issue with the express or implied consent of all of the parties to the proceeding.").

  2. <u>Consent may be implied</u>. As the above cases indicate, consent need not be express. In *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015), the Supreme Court held:

> [Respondent] contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be express. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent; it states only that a bankruptcy court must obtain "the consent"—consent *simpliciter*— "of all parties to the proceeding" before hearing and determining a non-core claim. § 157(c)(2). And a requirement of express consent would be in great tension with our decision in *Roell v. Withrow,* 538 U.S. 580, 123 S.Ct. 1696, 155 L.Ed.2d 775 (2003). That case concerned the interpretation of § 636(c), which authorizes magistrate judges to "conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case," with "the consent of the parties." The specific question in *Roell* was whether, as a statutory matter, the "consent" required by § 636(c) had to be express. The dissent argued that "[r]eading § 636(c)(1) to require express consent not only is more consistent with the text of the statute, but also" avoids constitutional concerns by "ensur[ing] that the parties knowingly and voluntarily waive their right to an Article III judge." 538 U.S., at 595, 123 S.Ct. 1696 (opinion of THOMAS, J.). But the majority—thus placed on notice of the constitutional concern—was untroubled by it, opining that "the Article III right is substantially honored" by permitting waiver based on "actions rather than words." *Id.,* at 589, 590, 123 S.Ct. 1696.
> The implied consent standard articulated in *Roell* supplies the appropriate rule for adjudications by bankruptcy courts under § 157. Applied in the bankruptcy context, that standard possesses the same pragmatic virtues—increasing judicial efficiency and checking gamesmanship—that motivated our adoption of it for consent-based adjudications by magistrate judges. See *id.,* at 590, 123 S.Ct. 1696.

135 S. Ct. at 1947-48.

3. <u>Plaintiff impliedly consented to the Court hearing his tort claims</u>. Plaintiff was required by Bankruptcy Rules 7008 and 9027 to state in his initial filings whether or not he consented to the Court trying and determining his tort claims. He did not do so. Local Rule 7016-1(a) provides:

> (a) (<u>Implied Consent</u>) A party's failure to comply with BR 7008, BR 7012, or BR 9027 (requiring each party to state whether the party does or does not consent to the bankruptcy court entering final orders or judgment) constitutes implied consent.

Plaintiff had two chances to state his nonconsent in his initial pleadings and did not do so. It was not until more than four months later that Plaintiff attempted to state his nonconsent. By then it was too late. Indeed, the timing makes it appear that Plaintiff waited to see how he would fare with the Court before deciding whether to consent. By the time Plaintiff filed his belated notice of nonconsent, the Court had already made a number of rulings in the proceeding and issued two scheduling orders, while Plaintiff had filed and lost two appeals, moved to disqualify the Court, and moved to transfer the proceeding to the District Court. Parties are required to state their consent or nonconsent at the outset to prevent forum shopping in the middle of a case. The Court's local rule "check[s] gamesmanship." *Wellness*, 135 S. Ct. at 1948.

Plaintiff's tardy attempt to file his nonconsent was ineffective. Under the plain language of the Bankruptcy Rules and the Local Rule, Plaintiff impliedly consented to the Court hearing his defamation and IIED claims and entering a final judgment.

## Conclusion

Plaintiff has no right to a jury trial in this nondischargeability proceeding and has consented to this Court presiding over the trial of his defamation and IIED claims. The Court will reschedule the final pretrial conference and set a trial date on the defamation and IIED claims.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 28, 2022
Copies to: counsel of record

Barry J. Byrnes
1857 Paisano Rd.
Las Cruces, N.M. 88005