UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SYLVIA MARIE BYRNES,                                               No. 20-12086-t7

    Debtor.

BARRY J. BYRNES,

    Plaintiff,

v.                                                                                       Adv. No. 20-1070-t

SYLVIA MARIE BYRNES,

    Defendant.

## OPINION

    Before the Court are two tort claims that are ready for trial: defamation and intentional infliction of emotional distress ("IIED"). Both claims were removed from state court after Defendant filed this chapter 7 bankruptcy case. Plaintiff has not consented to the Court hearing either claim. The Court earlier ruled that Plaintiff is not entitled to a jury trial of the claims. *In re Byrnes*, 2022 WL 272646, at *3 (Bankr. D.N.M.).

    Plaintiff has moved the United States District Court for the District of New Mexico to withdraw the reference for trial of the claims (the "Reference Withdrawal Motion"). The motion is pending. For the reasons set forth below, the Court makes the following rulings related to trial of the claims:

    1.    The Court adopts the "narrow" interpretation of "personal injury tort" found in 28 U.S.C. § 157(b)(5);

    2.    Under the narrow interpretation, Plaintiff's defamation claim is not a personal injury tort;

3. Plaintiff's IIED claim may be subject to dismissal or summary disposition because it is based entirely on Defendant's alleged defamatory statements;

4. In any event, the Court can try the IIED claim because the gravamen of Plaintiff's claims is defamation; and

5. The Court will not remand the claims, but will try them in Las Cruces.

If the District Court has a different view about the legal issues before the Court and/or how best to proceed, it can supersede the Court's decision(s) when it rules on the Reference Withdrawal Motion.

A. <u>Facts</u>.[1]

Based on the docket in this proceeding and the State Court Action (defined below), the Court finds:

Barry Byrnes, the pro se[2] plaintiff, is Defendant/Debtor's estranged husband. On March 29, 2019, Plaintiff filed a state court action against Defendant and their son in the Third Judicial District Court, State of New Mexico, styled *Barry Byrnes v. Sylvia and Matthew Byrnes*, No. D-307-CV-2019-00916 (the "State Court Action"). The complaint alleged six causes of action. The state court judge dismissed four of the claims, leaving only the defamation and IIED claims. These claims relate to a heated argument between Plaintiff and Defendant in July 2018, which prompted Defendant to call the police and report that Plaintiff had assaulted her.

Defendant filed this chapter 7 bankruptcy case on October 30, 2020. Plaintiff removed the claims to this Court, simultaneously filing additional claims in a separate proceeding. The Court

---

[1] The Court takes judicial notice of its docket in this consolidated adversary proceeding, the main bankruptcy case, and the State Court Action (defined below). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Mr. Byrnes used to be licensed to practice law in New Mexico. He currently is on inactive status.

ordered the proceeding consolidated and ordered Plaintiff to file an amended complaint in the consolidated proceeding.

Plaintiff's amended complaint has two counts. In count one, Plaintiff asserts the defamation and IIED claims and asks that any judgment thereon be declared nondischargeable. Count two seeks an order requiring Debtor "to pay and continue to pay her share of contract and/or domestic support obligations" related to their marital residence, and alleging numerous theories under which such obligations are nondischargeable. Defendant answered count one and filed a motion to dismiss count two.

The main bankruptcy case was closed as a "no asset" case on March 11, 2021.

On March 18, 2021, Plaintiff filed the Reference Withdrawal Motion. The motion was assigned no. CV 21-00295 MV/JHR and is pending.

On July 2, 2021, the Court granted Defendant's motion to dismiss count two, leaving only the defamation and IIED claims to be adjudicated.

Slightly paraphrased, Plaintiff alleges the following conduct by Defendant in count one:

> 7. On July 13, 2018, Plaintiff and Defendant had a domestic argument at their residence.
> 8. Defendant called the police after the argument and alleged that she was assaulted during the argument and that she was a victim of domestic abuse.
> 9. Defendant's factual statement to police are malicious and willful and false.
> 14. On July 16, 2018, Defendant filed a petition in state court for an order of protection from domestic abuse.
> 16. Defendant again alleged that she was assaulted during the domestic argument of July 13 and was a victim of domestic violence.
> 17. Defendant's malicious and false factual statements are handwritten and contained in paragraphs 5 and 6 of the petition.
> 27. Defendant's malicious and willful and false statement about the nature of the alleged assault caused Plaintiff to be targeted for the grand jury investigation.
> 43. The malicious and false and injurious words Defendant spoke to police about Plaintiff are recorded by the arresting officer in the Magistrate Court misdemeanor complaint.

44. Defendant's malicious and false and injurious written words communicated
to the state court and the Domestic Violence Special Commissioner are recorded in
the petition she filed in the state court for protection from domestic abuse.

The proceeding has progressed through the pretrial stages. Discovery is now complete and the defamation and IIED claims are ready for trial.

To date, Plaintiff has filed the following appeals and motions related to his claims:

| Court | Filing | Date | Disposition |
|---|---|---|---|
| 1. State court | Notice of appeal | 1/27/20 | Dismissed |
| 2. State court | Notice of appeal | 2/26/20 | Dismissed |
| 3. Bankruptcy court | Notice of appeal | 2/16/21 | Dismissed |
| 4. Bankruptcy court | Notice of appeal | 2/16/21 | Dismissed |
| 5. Bankruptcy court | Motion to disqualify judge | 3/18/21 | Denied |
| 6. Bankruptcy court | Notice of appeal | 7/12/21 | Dismissed |
| 7. Bankruptcy court | Notice of appeal | 8/2/21 | Dismissed |
| 8. Bankruptcy court | Notice of appeal | 2/7/22 | Dismissed |
| 9. District court | Notice of appeal | 7/12/21 | Pending |
| 10. District court | Motion to vacate the order of reference to Magistrate Judge | 11/12/21 | Pending |
| 11. Tenth Circuit | Petition for Writ of Mandamus | 2/18/22 | Pending |

Based on the record in this case, Defendant is judgment proof. Thus, it appears Plaintiff is pursuing his claims for noneconomic reasons.

B.  Trial of "Personal Injury Torts."

28 U.S.C. § 157(b)(5) provides in part:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending . . . .

Although this provision does not deprive the bankruptcy court of jurisdiction to hear personal injury claims, *see, e.g., Stern v. Marshall*, 564 U.S. 462, 479 (2011) (§ 157(b)(5) is not jurisdictional); and *In re Smith*, 389 B.R. 902, 913 (Bankr. D. Nev. 2008) (same), it allocates jurisdiction between the district court and the bankruptcy court. As a result, "the district court will

almost always hear personal injury tort cases, especially if a timely request to do so it made."

*Smith*, 389 B.R. at 913. The Court must determine whether the defamation and IIED claims are personal injury tort claims.

C. The Court Adopts the Narrow Interpretation of "Personal Injury Tort."

In *In re Gawker Media LLC*, 571 B.R. 612 (Bankr. S.D.N.Y. 2017), Judge Bernstein stated:

> Lower courts in the Second Circuit and elsewhere have adopted different approaches to determine whether a particular claim constitutes a "personal injury tort" claim. [*In re Residential Capital, LLC*, 536 B.R. 566, 571–75 (Bankr. S.D.N.Y. 2015)] (collecting cases). The "narrow view" requires a trauma or bodily injury or psychiatric impairment beyond mere shame or humiliation to meet the definition of "personal injury tort." *Id.* at 571–72 (citations omitted); *accord Perino v. Cohen (In re Cohen)*, 107 B.R. 453, 455 (S.D.N.Y. 1989) . . . . The broad view interprets "personal injury tort" to "embrace[ ] a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and include[ ] damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering." *Residential Capital*, 536 B.R. at 572 (quoting *Boyer v. Balanoff (In re Boyer )*, 93 B.R. 313, 317–18 (Bankr. N.D.N.Y. 1988) and collecting cases). Finally, under the intermediate, "hybrid" approach, a bankruptcy court may adjudicate claims bearing the "earmarks of a financial, business or property tort claim, or a contract claim" even where those claims might appear to be "personal injury torts" under the broad view. *Id.* (quoting *Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*, 281 B.R. 154, 161 (Bankr. D. Conn. 2002) and citing, *inter alia*, *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 908–13 (Bankr. D. Nev. 2008)).

571 B.R. at 620. *See also Smith*, 389 B.R. at 907-08 (discussing the three interpretations); *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160-61 (Bankr. D. Conn. 2002) (same).

The United States Supreme Court acknowledged the disagreement on the proper interpretation of "personal injury tort" in *Stern*, 564 U.S. at 479 n.4, but did not decide it. Neither the Tenth Circuit nor the Tenth Circuit Bankruptcy Appellate Panel has addressed the issue. A Utah district court judge adopted the narrow interpretation. *See In re C.W. Mining Co.*, 2012 WL 4882295, at *6 (D. Utah.).

Judge Bernstein concluded that the narrow interpretation is the proper one:

> Turning first to the canons of statutory interpretation, and specifically the canon *noscitur a sociis*, the Court concludes that the narrow interpretation, which requires trauma or bodily injury, or a psychic injury beyond mere shame or humiliation, is the correct interpretation. *Noscitur a sociis* is, put simply, the principle that "a word is known by the company it keeps." *Yates v. United States*, —— U.S. ——, 135 S. Ct. 1074, 1085, 191 L. Ed. 2d 64 (2015) . . . The Supreme Court has relied on the *noscitur a sociis* canon "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S. Ct. 1579, 6 L. Ed. 2d 859 (1961)). Here, the relevant statutory provisions couple "personal injury torts" and "wrongful death." "Wrongful death" refers to "[a] death caused by a tortious injury." BRYAN A. GARNER, BLACK'S LAW DICTIONARY 485 (10th ed. 2014) ("BLACK'S"). The term "personal injury tort" should be construed in a manner meaningfully similar to "wrongful death," and require a physical trauma.

*Gawker Media*, 571 B.R. at 620-21. He also reviewed the legislative history of § 157(b)(5) in detail and concluded that "the exception was intended to be narrow and not derogate from the bankruptcy court's traditional role of resolving claims through the claims resolution process." *Id.* at 622. Judge Bernstein was critical of the broad interpretation because it "cuts a broad exception that removes all tort claims from the jurisdiction of the bankruptcy court's claims resolution process." *Id.* at 622. Finally, Judge Bernstein was critical of the hybrid approach, opining that it "finds no support in the words of the relevant statutes, any canon of construction or the legislative history, and is unworkable. . . ." *Id.* at 623.

Similarly, in *Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348 (E.D. Va. 2006), the district court held that "the personal injury exception under § 157 is limited to a narrow range of claims that involve an actual physical injury. . . . it is the opinion of this Court that Congress intended to limit the claims fitting the exception by introducing the narrow, modifying language 'personal injury.'" *Id.* at 351.

Likewise, in *In re Cohen*, 107 B.R. 453 (S.D.N.Y. 1989), the district court held:

> This is not a claim for a "personal injury tort" in the traditional, plain-meaning sense of those words, such as a slip and fall, or a psychiatric impairment beyond mere shame and humiliation. The Supreme Court has repeatedly held that "'[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.'" *Escondido Mut. Water Co. v. LaJolla Indians,* 466 U.S. 765, 772, 104 S. Ct. 2105, 2110, 80 L. Ed. 2d 753 (1984), *quoting North Dakota v. United States,* 460 U.S. 300, 312, 103 S. Ct. 1095, 1102, 75 L. Ed. 2d 77 (1983). There is no legislative history that would bring this plaintiff's claim for a tort without trauma within the statutory exception for a personal injury tort. *See, U.S. Code Congr. & Admin. News,* 1984, at 576 *et seq.* On the contrary, the legislative history indicates that Congress intended this exception for a "narrow range" of claims. *Id.,* Statement of Congr. Kastenmeier at 580.

*Id.* at 455. Judge Stevenson agreed with *Cohen* in *In re Atron Inc. of Mich.*, 172 B.R. 541 (Bankr. W.D. Mich. 1994):

> We believe, however, that drawing the distinction as did *Interco, Cohen, Vinci,* and *Bertholet* between the "traditional, plain meaning sense" of the words "personal injury" and the emotional distress and humiliation of nontraditional personal injury tort claims yields the logical, preferable result. We are unwilling to adopt the broad exception to bankruptcy court jurisdiction urged by Claimant and thus open the door to a mass exodus of the claims allowance process to the district court . . . .

*Id.* at 545.

For other cases adopting the "narrow" interpretation, *see In re C.W. Mining Co.*, 2012 WL 4882295, at *6 (quoting *Massey* with approval); *Belcher v. Doe*, 2008 WL 11450550, at *4 (W.D. Tex.) (adopting the "narrow understanding" of personal injury tort); *Hurtado v. Blackmore*, 2007 WL 9753286, at *2 (S.D. Tex.) (quoting and following *Massey* and *Cohen*); *Lombard v. Greenpoint Savings Bank*, 1997 WL 114619, at *2 (D. Conn.) (citing *Cohen* for the proposition that the "exception for personal injury torts applies to a narrow range of claims"); *In re Finley, Kumble*, 194 B.R. 728, 734 (S.D.N.Y. 1995) (a "tort claim 'without trauma or bodily injury is not within statutory exception for a personal injury tort'"); *In re Interco, Inc.*, 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991) (adopting the narrow view); *In re Vinci*, 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989) (following *Cohen*); *In re Sheehan Mem'l Hosp.*, 377 B.R. 63, 68 (Bankr.

W.D.N.Y. 2007) (adopted the narrow interpretation); *Bertholet v. Harman*, 126 B.R. 413, 415 (Bankr. D.N.H. 1991) (citing *Cohen* and *Vinci* with approval); *In re Davis*, 334 B.R. 874, 878 n.2 (Bankr. W.D. Ky. 2005), aff'd in part and reversed in part on other grounds, 347 B.R. 607 (W.D. Ky. 2006) (citing *Cohen*, the court rules that libel is not a personal injury tort); *In re Chateaugay Corp.*, 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990) ("the law in this district is that Congress intended this exception for a 'narrow range of claims'").

In contrast, under the "broad" interpretation:

> The term "personal injury tort" embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering, BLACK'S LAW DICTIONARY 707, 1335 (5th ed. 1979).

*In re Boyer*, 93 B.R. 313, 317-18 (Bankr. N.D.N.Y. 1988).[3] In addition to the definitional argument, courts adopting the broad interpretation point to § 522(d)(11), which uses the term "personal bodily injury." These courts argue that if Congress had intended to limit § 157(b)(5) to torts resulting in bodily injury, it could have said so. *See, e.g., In re Nifong*, 2008 WL 2203149, at *3, (Bankr. M.D.N.C.) (narrow view ignores the language of § 522(d)(11)); *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160 (Bankr. D. Conn. 2002) (same).

The "hybrid" interpretation agrees with the "broad" interpretation but fears that

> the "broader" view may place too much reliance on whether the alleged claim would be considered a "personal injury tort" in a nonbankruptcy context. That presents at least some risk that financial, business or property tort claims also could be withdrawn from the bankruptcy system if that "broader" view is blindly followed. . . . Accordingly . . . . in cases where it appears that a claim might be a "personal injury tort claim" under the "broader" view but has earmarks of a financial, business or property tort claim, or a contract claim, the court reserves the

---

[3] As discussed below, the definition quoted in *Boyer* is one of two definitions in the current version of Black's Law Dictionary. The first definition supports the narrow interpretation of "personal injury tort."

right to resolve the "personal injury tort claim" issue by (among other things) a more searching analysis of the complaint.

*Ice Cream Liquidation*, 281 B.R. at 161; *see also Smith*, 389 B.R. at 908 (same).

The Court concludes that "personal injury tort" should be interpreted narrowly. First, Judge Bernstein's *Noscitur a sociis* analysis is persuasive. Because "personal injury tort" is next to "wrongful death," the terms should be construed together as dealing with similar types of injuries.

Second, the legislative history shows that Congress meant "personal injury tort" to refer to torts similar to "claims arising from automobile accidents," i.e., a "narrow range of claims.[4]

Third, consideration of the personal injury attorney lobbying effort after *Johns-Manville* leads to the conclusion that the personal injury torts referred to in § 157(b)(5) were the "traditional, plain-meaning types."

Fourth, there is no constitutional problem with bankruptcy courts hearing tort claims, so a broad interpretation of "personal injury tort" is not required to satisfy *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982). *See In re Dow Corning Corp.*, 215 B.R. 346, 353-54 (Bankr. E.D. Mich. 1997) (no constitutional dimension to § 157(b)(2)).

Fifth, a narrow interpretation of "personal injury tort" avoids unduly burdening the District Court with trial of bankruptcy-related claims, which burden Congress could not have intended.

Sixth, Black's Law Dictionary's *first* definition of personal injury tort is "any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury." Black's Law Dictionary (10th ed.). The *second* definition was the one relied upon by *Boyer* and *Ice Cream Liquidation*. Thus, Black's supports the narrow interpretation as much as or more than the broad one.

---

[4] *Gawker Media*, 571 B.R. at 621-22, quoting legislative history.

Seventh, as Judge Bernstein observed, the "broad" interpretation "essentially equates 'personal injury tort' with any tort. . . ." *Gawker Media*, 571 B.R. at 622. The broad interpretation reads "personal injury" out of § 157(b)(5), contrary to the rule that statutes should be construed so that, "if it can be prevented, no clause, sentence, or word is superfluous, void, or insignificant." *TWR, Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

Eighth, it is true that 11 U.S.C. § 522(d)(11) refers to "personal bodily injury" while 28 U.S.C. § 157(b)(5) refers to "personal injury." That difference does not outweigh the reasons favoring a narrow interpretation. Further, the sections were adopted six years apart, addressed different issues, and are in different titles of the United States Code.[5] Finally, Black's Law Dictionary (first definition) equates the two terms.

Ninth, the Court finds persuasive Judge Bernstein's opinion that the hybrid approach lacks "support in the words of the relevant statutes, any canon of construction or the legislative history, and is unworkable. . . ." 571 B.R. at 623. The hybrid approach is not an attempt to construe the statute as much as a judicially crafted compromise between two alternative constructions. The compromise is unsatisfactory. Whatever Congress intended when it used the term "personal injury tort," it wasn't the hybrid interpretation.

D.  The Defamation Claim.

Under the narrow interpretation, defamation claims are not personal injury torts. In *Gawker Media*, for example, Judge Bernstein held:

> Having adopted the narrow interpretation, the Court readily concludes that the Claims do not assert "personal injury torts." Torts such as defamation, false light and injurious falsehood do not require proof of trauma, bodily injury or severe psychiatric impairment, and the *Complaint* does not allege that the Claimants suffered these injuries.

---

[5] *Cf. Dewsnup v. Timm*, 502 U.S. 410 (1992) (identical language ("allowed secured claim") has different meanings in §§ 506(a) and (d).

571 B.R. at 623. *See also Massey Energy Co.*, 351 B.R. at 351 (defamation claim is not a personal injury tort); *Hurtado v. Blackmore*, 2007 WL 9753286, at *2 (same); *In re Davis*, 334 B.R. at 878 n.2 (libel is not a personal injury tort). The other cases adopting the narrow interpretation of "personal injury tort," cited above, did not involve defamation claims, but it is highly likely that they would have agreed with *Massey Energy* and *Gawker Media* that defamation is not a personal injury tort.[6]

E.     The IIED Claim.

1.     <u>The IIED claim may be subject to dismissal or other summary disposition</u>. A number of courts have ruled that alleged defamatory statements cannot be the basis of an IIED claim. In *Grimes v. Carter*, 50 Cal. Rptr. 808 (Ct. App. 1966), for example, the court refused to recognize an independent claim for intentional infliction of emotional distress arising from the alleged defamatory statements, holding:

> It is elementary that, although the gravamen of a defamation action is injury to reputation, libel or slander also visits upon a plaintiff humiliation, mortification and emotional distress. In circumstances where a plaintiff states a case of libel or slander, such personal distress is a matter which may be taken into account in determining the amount of damages to which the plaintiff is entitled, but it does not give rise to an independent cause of action on the theory of a separate tort. To accede to the contentions of the plaintiff in this case would be, in the words of Prosser, a step toward "swallowing up and engulfing the whole law of public defamation." If plaintiff should prevail in her argument it is doubtful whether any litigant hereafter would file a slander or libel action, post an undertaking and prepare to meet substantial defenses, if she could, by simply contending that she

---

[6] Courts adopting the "broad" or "hybrid" interpretation of "personal injury tort" come to the opposite conclusion: they have uniformly ruled that defamation claims *are* personal injury torts. *See, e.g.*, *In re Smith*, 389 B.R. at 908 (under the hybrid interpretation, libel is a personal injury tort); *In re Arnold*, 407 B.R. 849, 853 (Bankr. M.D.N.C. 2009) (same); *In re Von Volkmar*, 217 B.R. 561, 566 (Bankr. N.D. Ill. 1998) (same); *In re Bailey*, 555 B.R. 557, 561 (Bankr. N.D. Miss. 2016) (same); *Control Ctr., LLC v. Lauer,* 288 B.R. 269, 286 (M.D. Fla. 2002) ("Defamation is a personal injury tort"); *In re Roman Catholic Church for Archdiocese of New Orleans*, 2021 WL 3772062, at *4 (E.D. La.) (same); *In re White*, 410 B.R. 195, 203 (Bankr. W.D. Va. 2008) (same). Thus, the key issue is the proper interpretation of "personal injury tort."

> was predicating her claim solely on emotional distress, avoid the filing of such bond and render unavailable such substantial defenses as for example, justification by truth.

50 Cal. Rptr. at 813. Similarly, in *Barker v. Huang*, 610 A.2d 1341, 1351 (Del. 1992), the Delaware Supreme Court quoted *Grimes* and stated: "we hold with the great weight of foreign precedent that an independent action for intentional infliction of emotional distress does not lie where, as here, the gravamen of the complaint sounds in defamation."

For other cases in agreement with *Grimes* and *Barker*, see *Dworkin v. Hustler Magazine, Inc.,* 668 F. Supp. 1408, 1420 (C.D. Cal. 1987) ("Without such a rule, virtually any defective defamation claim ... could be revived by pleading it as one for intentional infliction of emotional distress; thus, circumventing the restrictions . . . on defamation claims"); *DeMeo v. Goodall*, 640 F. Supp. 1115, 1117 (D.N.H. 1986) (cause of action for intentional infliction of emotional distress may not be maintained concurrently with a defamation action); *Wilson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 490 N.Y.S.2d 553, 555 (App. Div. 1985) ("[I]t would be improper to allow plaintiff to evade the specific prerequisites for a libel action by presenting his cause of action in terms of the generalized tort of intentional infliction of emotional distress"); *Flynn v. Higham,* 197 Cal. Rptr. 145, 148 (Ct. App. 1984) ("to allow an independent cause of action for the intentional infliction of emotional distress based on the same acts which would not support a defamation action, would ... render meaningless any defense of ... privilege"); *Draker v. Schreiber*, 271 S.W.3d 318, 325 (Tex. App. 2008) ("As the gravamen of Draker's complaint was one of defamation, the trial court did not err in dismissing her claim for intentional infliction of emotional distress"); *Rykowsky v. Kickinson Public School Dist. No. 1*, 508 N.W. 2d 348, 352 (N.D. 1993) (IIED claim does not lie where the gravamen of the complaint sounds in defamation); *Fridovich v. Fridovich,* 598 So.2d 65, 70 (Fla.1992) ("the successful invocation of a defamation privilege *will* preclude a

-12-
Case 20-01070-t    Doc 151    Filed 03/11/22    Entered 03/11/22 15:29:18 Page 12 of 17

cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication"); *Hoffmann–La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 447 (Tex. 2004) ("[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available"); *Kirschstein v. Haynes*, 788 P.2d 941, 954 (Okla. 1990) (a claim "for intentional infliction of emotional distress ... based on the same factual underpinnings as a defamation claim for which the privilege applies, ... is also barred by the reach of the absolute privilege"); *Rubinson v. Rubinson*, 474 F. Supp.3d 1270, 1278-79 (S.D. Fla. 2020) (plaintiff cannot transform a defamation action into an IIED claim by characterizing the alleged defamatory statements as "outrageous"); *Miller v. Target Corp.*, 854 Fed. Appx. 567, 569 (5th Cir. 2021) (IIED is not recoverable in the alternative to a defamation claim); *Durepo v. Flower City Television Corp.*, 537 N.Y.S.2d 391, 392 (App. Div. 1989) (IIED cause of action is redundant to the defamation action and should have been dismissed); *Basilius v. Honolulu Pub. Co., Ltd.*, 711 F. Supp. 548, 552 (D. Haw. 1989) (IIED claim stands or falls with the defamation claim; it is parasitic of it); *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 432 (1989) ("it comports with the first amendment protections to deny an emotional-distress claim based on a false publication that engenders no defamation *per se*"); *Illaraza v. HOVENSA LLC*, 73 F. Supp. 3d 588, 614 (D.V.I. 2014) (under Virgin Islands law, an IIED claim cannot lie where the gravamen of the complaint sounds in defamation).

New Mexico has not ruled directly on the issue, However, in *Andrews v. Stallings*, 119 N.M. 478, 491 (Ct. App. 1995), the New Mexico Court of Appeals stated:

> In recent years, public figures increasingly have attempted to use the intentional infliction of emotional distress claim "to make an end-run around the obstacles posed by defamation law's harm to reputation element and its constitutional aspects." Arlen W. Langvardt, *Stopping the End–Run by Public Plaintiffs: Falwell and the Refortification of Defamation Law's Constitutional Aspects,* 26 Am. Bus. L.J. 665, 666 (1989) (footnote omitted) [hereinafter *Stopping the End–Run*]. In

> *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), the Supreme Court "drastically limited, if not eliminated, public officials' and public figures' ability to employ the emotional distress option to evade the obstacles imposed by defamation law." *Stopping the End–Run, supra,* at 668.

119 N.M. at 491. *Andrews* shows that New Mexico law does not allow litigants to evade the requirements for proving defamation by pleading an IIED claim on the same facts.

Here, the IIED claim is based entirely on Defendant's alleged defamatory statements to the police, the state court, and others. Under the "great weight" of the authority cited above, Plaintiff's IIED claim appears unviable.

      2.    <u>In any event, the gravamen of plaintiff's claims is defamation, so the Court can try them both</u>. When deciding whether an IIED claim is a personal injury tort, the Court must determine if the alleged emotional distress is central to the cause of action or is merely an element of damages. In *In re Residential Capital, LLC*, 536 B.R. 566 (Bankr. S.D.N.Y. 2015), Judge Glenn observed that "[s]ome courts have held, without analysis or explanation, that the bankruptcy court does not have subject matter jurisdiction to adjudicate the emotional distress claim under section 157(b)(5)," *Id.* at 572-73. After citing a number of cases, Judge Glenn stated:

> Some courts have found it unnecessary to settle on one single approach for determining whether an emotional distress claim involves a personal injury tort, focusing instead on the "gravamen" of the claim. . . . The court's analysis in [*In re Thomas*, 211 B.R. 838 (Bankr. D.S.D. 1997)] and in other cases points strongly towards analyzing the context and central focus of the claims—if an IIED claim is the tail wagging the dog, section 157(b)(5) should not require dislodging the claim from bankruptcy court resolution of a portion of a claim asserted against a debtor. If the IIED claim is the gravamen of the claim, as the South Carolina bankruptcy court found in *Thomas,* section 157(b)(5) does not permit the bankruptcy court to try the claim absent consent.

536 B.R. at 573. The district court in Utah came to the same conclusion in *In re Lang*, 166 B.R. 964 (D. Utah 1994), holding:

> Regardless of whether intentional infliction of emotional distress is a true personal injury tort under § 157(b)(5), Dr. Lang's claims are fundamentally allegations of

fraud. Thus, the court finds Dr. Lang's allegation of emotional distress claim too tangential to his lawsuit to support withdrawal of the entire matter solely on the basis of the emotional distress claim. Further, Dr. Lang's claim of emotional distress is intimately connected to his claims of fraud, making it impractical and inefficient to withdraw the emotional distress claim by itself.

166 B.R. at 967. Similarly, in *Bertholet v. Harman* the bankruptcy court held:

I believe the better rule is that if a mental distress claim does not involve physical injury, then only if the claim is the gravamen of a complaint would § 157(b)(5) be invoked. Otherwise, as stated above, jurisdiction would too easily be lost from this court, and I cannot believe Congress intended that.
In short, the claims in the present case do not rise to the level of "psychiatric impairment" caused by wilful conduct in that regard. The claims are more in the nature of humiliation and other emotional harm which are incidental claims in this action. This does not implicate § 157(b)(5).

126 B.R. at 416.

The approach taken by these courts is reasonable and will be followed here. The gravamen of Plaintiff's claims is defamation. Defamation is the "context and central focus of the claim," 536 B.R. at 573. Plaintiff does not allege any wrongful conduct by Defendant other than her allegedly defamatory statements. The Court concludes that even if the IIED claim is viable, it is the "tail wagging the dog," *id.*, and should remain in the bankruptcy court for trial.[7]

F.     The Court Will Try the Claims.

Subject to a different conclusion by the District Court on the Reference Withdrawal Motion, this Court will try the torts claims because defamation is not a personal injury tort and is the gravamen of Plaintiffs' claims. The claims can be tried relatively quickly and inexpensively.[8] The Court does not want to shirk its duty to hear cases filed in bankruptcy court, especially contentious cases like this one. *See, e.g., Dear v. Nair*, 2021 WL 1517983, at *5, n.1 (D.N.M.)

---

[7] Emotional distress damages are available in defamation cases. *See Castillo v. City of Las Vegas*, 145 N.M. 205, 212 (Ct. App. 2008), *citing Marchiondo v. Brown*, 98 N.M. 394, 402 (S. Ct. 1982).
[8] The Court proposes to try the claims in Las Cruces, given the age and economic situation of the parties and the location of the parties, witnesses, and counsel.

("the Court is mindful of its continuing jurisdictional duty to hear claims properly presented before it. . . ."); *Russell v. Bank of America, N.A.*, 2012 WL 1739721, at *1 (D. Nev.) ("This Court has a duty to hear all cases in which its subject matter jurisdiction is properly invoked. . . ."); *In re Hillsborough Holdings Corp.*, 123 B.R. 1004, 1013 (Bankr. M.D. Fla. 1990) (alludes to "the court's presumptive duty to hear and resolve matter which are properly before it").

If the claims are "core" because they were brought as part of a nondischargeability proceeding, then the Court will enter a final judgment. If the claims are not "core," then the Court will enter proposed findings of fact and conclusions of law for review by the District Court. *See* 28 U.S.C. § 157(c)(1). This issue will be determined later.

G. <u>Remand</u>.

As an alternative to trying the claims, this Court and the District Court have the right to remand the claims to state court "on any equitable ground." *See* 28 U.S.C. § 1452(b). *See also CitiMortgage, Inc. v. Davis*, 20 F.4th 352, 356-57 (7th Cir. 2021) (the bankruptcy court may remand a case under 28 U.S.C. § 1452(b)); *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995) ("Congress has placed broad restriction on the power of federal appellate courts to review district court orders remanding removed cases to state court").

There are good reasons to remand the claims, e.g., convenience of the parties, location of witnesses, and the purely state law nature of the claims. The main reason not to remand them is the potential expense of a state court jury trial. Defendant has no income other than social security. She is 79 and lives with the parties' son. Unlike Plaintiff (a former attorney and pro se in this proceeding), Defendant has to pay counsel. The Court has attempted to keep the parties' expenses to a minimum. Because of that, the Court will not remand the claims to state court for trial.

H. <u>Withdrawing the Reference</u>.

The District Court has discretion to withdraw the reference for one or both of the tort claims. 28 U.S.C. § 157(d). If the District Court disagrees with the Court's legal analysis or proposed method of proceeding as outlined in this opinion, it could withdraw the reference in full or in part to address the areas of disagreement.

Conclusion

The Court recommends to the District Court that the reference not be withdrawn for either claim. The Court will schedule the claims for a bench trial in Las Cruces, with sufficient intervening time, however, for the District Court to rule on the Reference Withdrawal Motion. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 11, 2022
Copies to: counsel of record

Barry J. Byrnes
1857 Paisano Rd.
Las Cruces, N.M. 88005